[No. 8223–3–II.  Division Two.  December 2, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. CORNELL KNIGHT, *Appellant.*

*Bradley C. Poole* and *Girolami, Edmondson, Poole & Wood,* for appellant (appointed counsel for appeal).

*William H. Griffies, Prosecuting Attorney,* and *Barbara L. Corey-Boulet, Deputy,* for respondent.

ALEXANDER, J.—Cornell Knight appeals his second degree burglary conviction. He alleges that his trial counsel was ineffective, assigns error to the admission of certain identification testimony, and contends that the trial evidence was insufficient to support a conviction. We affirm.

Knight initially was charged with the crime of first degree burglary and the case proceeded to a jury trial on that charge. Viewing all of the evidence in this case in the light most favorable to the State, the facts may be summarized as follows:

On January 1, 1984, Dwayne (Peewee) Cason was residing temporarily in an apartment one floor above his permanent apartment. Early that morning, about 3 a.m., the defendant, Cornell Knight, in the company of others, had come to Cason's apartment following an evening spent celebrating New Year's Eve. Sometime later that morning, Cason granted Knight permission to "go downstairs" to his residence in order that Knight might be "alone" with a girl. Cason gave Knight a key to the lower apartment, but Cason did not give Knight permission to take anything from the residence. Knight left Cason's apartment on the afternoon of January 1 at about 2 p.m.

On January 2, Cason noticed that his stereo system was missing from his permanent residence. He also observed that a stick he had placed in the kitchen window for security purposes was missing.

The following day, January 3, two 12-year-old neighbor boys, Mike and Rex, told Cason that they had seen a man take Cason's stereo from the apartment house at about 7 or 8 p.m. on January 1. The boys said that the man taking the stereo said that he was Cason's brother, and that he was

borrowing the stereo. They described the man to Cason. Cason believed that the boys had described Knight, so he showed Mike a picture of Knight. Upon seeing the picture, Mike said to Cason, "Yeah that's him." Cason did not show the picture to Rex, but he showed Mike a picture of himself and a roommate to see if Mike was confused about his identification of Knight.

Police Officer Gordon Dustin later separately showed Mike and Rex an array of five photographs of male subjects using jail "mug shots." Mike picked Knight's photograph out of a photo array, but Rex did so only tentatively. In court, Mike positively identified Knight, while Rex pointed to Knight in court and said, "it kind of looks like him, but not all the way."

Knight presented an alibi defense, but the jury apparently disbelieved it and found him guilty of the lesser included offense of second degree burglary.

Knight assigns error to the trial court's admission of the testimony of 12–year–old Mike, arguing that his eye witness identification of Knight at trial was "tainted by an impermissibly suggestive viewing of a photograph of appellant prior to any properly conducted pre–trial identification procedure."

Knight cites *Simmons v. United States,* 390 U.S. 377, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968) for the proposition that convictions will be set aside if based on a trial identification of a defendant following a pretrial identification by photograph that is impermissibly suggestive so as to give rise to a substantial likelihood of irreparable misidentification. In *Simmons,* impermissibly suggestive photo arrays were shown to witnesses by federal officers. Knight suggests that the rule of *Simmons* applies to Cason's showing of the photographs to Mike. This contention has no merit. In our judgment, *Simmons* has no application to pretrial photographic identification procedures engaged in by private citizens. *See People v. Boothe,* 65 Cal. App. 3d 685, 691, 135 Cal. Rptr. 570 (1977). *See also State v. Agee,* 15 Wn. App. 709, 713–14, 552 P.2d 1084 (1976)

(wherein this court held that evidence obtained by a private citizen using illegal means will be suppressed only when the State in some manner "instigated, encouraged, counseled, directed, or controlled that conduct."), *aff'd on other grounds,* 89 Wn.2d 416, 73 P.2d 355 (1977).

The only photo identification procedure implicating *Simmons* was the procedure whereby five photos of males, including a photo of Knight, were shown to Mike and Rex. There is no suggestion by Knight that this procedure was impermissibly suggestive in any way. The identification of Knight in court by Mike and Rex was, therefore, proper evidence. The degree to which this testimony was to be believed was purely and simply a question for the jury.

A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

WORSWICK, C.J., and REED, J., concur.