

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUN 1 4 2018
*CHIEF JUSTICE*

This opinion was filed for record

at ___8 am___ on ~~June 14, 2018~~

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 94712-1 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | En Banc |
| | ) | |
| EDWARD LEON NELSON, | ) | |
| | ) | |
| Petitioner. | ) | |
| | ) | Filed ___JUN 1 4 2018___ |

JOHNSON, J.—This case involves review of a trial court "to convict"

attempted first degree robbery instruction. Petitioner Edward Nelson contends that

the State had to prove that the employee he was attempting to rob had ownership,

representative, or possessory interest in the property. For this proposition he relies

on the holding in *State v. Richie*[1] and argues that this "essential element" of

representative or possessory interest should have been included in the "to convict"

instruction. The Court of Appeals here held that "the trial court's ["to convict"]

---

[1] 191 Wn. App. 916, 365 P.3d 770 (2015).

instruction for attempted first degree robbery lacked an essential element and unconstitutionally relieved the State of its burden of proving each element beyond a reasonable doubt," but concluded that this was harmless error. *State v. Nelson*, No. 34032-5-III, slip op. at 2 (Wash. Ct. App. May 2, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/340325_ord.pdf. We hold that the State has to prove only two essential elements in a prosecution of criminal attempt: (1) intent to commit a specific crime, and (2) any act which is a substantial step toward the commission of that crime. Although we affirm the Court of Appeals in result, we reject as unnecessary *Richie*'s holding that in order to prove that an employee acted in his or her representative capacity, it must be established that he or she had care, custody, control, or management of the property. We further hold that the "to convict" instruction in this case was constitutionally adequate.

FACTS AND PROCEDURAL HISTORY

The following is a summary of the facts. On August 15, 2014, Myung Meinhold, a pharmacy technician employed by Rite Aid, was working in the store's pharmacy department. She was helping customers at the pharmacy checkout counter when she first noticed Nelson. Nelson kept going to the back of the line every time a new customer would come up behind him. Eventually, Nelson came up to the checkout counter with a roll of paper towels. He also had in his hand a note, which he showed to Meinhold. Meinhold saw the note, which

2

contained a demand for oxycodone, but could not read it. Nelson told Meinhold he needed oxycodone and pointed to a gun he was holding in his other hand. The pistol was not pointed directly at Meinhold, but she saw the gun and heard Nelson say, "[Y]ou're going to get this for me or I'm going to shoot you in ten seconds." 3 Verbatim Report of Proceedings (VRP) (Jan. 6, 2016) at 52.

Meinhold told Nelson that she did not have access to the oxycodone and would have to get the pharmacist, Thomas Newcomer. Meinhold testified that she frantically attempted to explain to the pharmacist that Nelson had a gun and was demanding oxycodone. Newcomer testified that he was on the phone when Meinhold approached him and that he initially thought Nelson had a fake prescription. The pharmacist did not see Nelson's gun and told Nelson he did not have oxycodone in stock. When Nelson next demanded money, the pharmacist finally realized Nelson was trying to rob the store. The pharmacist testified that he had no cash on his person and that he told Nelson he was going to call the store manager to "get whatever he's asking for." 3 VRP (Jan. 6, 2016) at 79. Nelson quickly left the store and was later apprehended by police.

The State charged Nelson with attempted first degree robbery. The State alleged that "with intent to commit the crime of First Degree Robbery . . . [Nelson] took a substantial step towards unlawfully taking the property of another, from the person or in the presence of . . . Meinhold and/or . . . Newcomer." Clerk's Papers

3

(CP) at 31. The case was tried to a jury. At the close of the State's case, Nelson moved to dismiss the attempted robbery charge as to the pharmacist on the basis that "[t]here was no deadly force ever presented to Mr. Newcomer." 5 VRP (Jan. 11, 2016) at 401. The State argued that because Nelson was charged with attempted first degree robbery and not the completed crime, "[a]ll that's required is that [Nelson] intended to commit the crime of first degree robbery and that he took a substantial step." 5 VRP (Jan. 11, 2016) at 401. Nelson also moved to dismiss the charge as to Meinhold, arguing that Meinhold "had no access to the property taken" and that "the critical issue is the relationship of the property to the person that was threatened," citing to *Richie* from Division Two and *State v. Latham*[2] from Division One, neither one of which deals with the crime of attempted robbery. 5 VRP (Jan. 11, 2016) at 402. The trial court reasoned that "it's an issue of theft," and that "the [S]tate doesn't have to prove who owned the property, just that it was a theft that was intended." 5 VRP (Jan. 11, 2016) at 402, 403.

The trial judge nevertheless "excise[d]" Newcomer from the final jury instructions on the attempted robbery charge for insufficient evidence. 5 VRP (Jan. 11, 2016) at 406. The trial judge noted, however, that Meinhold's "status as an employee of the owner [was] sufficient to satisfy the rule of [*Richie*]." 5 VRP (Jan.

---

[2] 35 Wn. App. 862, 670 P.2d 689 (1983).

11, 2016) at 405. The trial court stated that it intended to instruct the jury "in the elements instruction on attempted first degree robbery, that the [S]tate has to prove that Ms. Meinhold was an employee of the owner of the property" with regard to the ownership, or representative or possessory interest element. 5 VRP (Jan. 11, 2016) at 343.

The trial court rejected Nelson's proposed instruction that relied on the holding of *Richie* for the definition of first degree robbery. The language Nelson proposed would have instructed the jury that robbery is a taking of personal property from "a person who had ownership, representative or possessory interest in the property." CP at 42. His proposed "to convict" instruction would have required the State to prove that Meinhold had ownership, representative or possessory interest in the property, without alluding to her employee or agent status. Defense attorney Aaron Dalan in colloquy with the court stated:

> I'm intending to argue—whatever instructions the court decides to give, employee or whatever, the [S]tate still has to prove possession. It's one of the elements. I think the jury could—maybe they won't. Maybe they'll say, no; she had possession. . . . I think the jury could conclude there's not a sufficient possessory interest on the part of Ms. Meinhold to complete the greater crime *or to justify saying it's an attempt.*

6 VRP (Jan. 12, 2016) at 421 (emphasis added). Nelson objected to instruction 7, which, in defining the crime of robbery, also instructed the jury that "[a] person with a representative interest includes an agent, employee or other representative

5

of the owner of the property." CP at 66; 6 VRP (Jan. 12, 2016) at 415. He also

objected to the "to convict" instruction requiring the State to prove only that

Meinhold "was an employee of the owner of the property," as to the ownership

element of the specific underlying crime charged. CP at 67.

The resulting "to convict" jury instruction 8 at issue was given as follows:

> To convict the defendant of the crime of Attempted First
> Degree Robbery in Count 1, each of the following elements of the
> crime must be proved beyond a reasonable doubt:
> (1) That on or about August 15, 2014, the defendant did an act
> that was a substantial step towards unlawfully taking personal
> property from the person or in the presence of another, Myung B.
> Meinhold;
> (2) That Myung B. Meinhold was an employee of the owner of
> the property;
> (3) That the defendant intended to commit theft of the property;
> (4) That the attempt to take was against the person's will by the
> defendant's use or threatened use of immediate force, violence, or fear
> of injury to that person;
> (5) That force or fear was used by the defendant to obtain or
> retain possession of the property or to prevent or overcome resistance
> to the taking or to prevent knowledge of the taking;
> (6) (a) That in the commission of these acts or in immediate
> flight therefrom the defendant was armed with a deadly weapon; or
> (b) That in the commission of these acts or in the immediate
> flight therefrom the defendant displayed what appeared to be a
> firearm; and
> (7) That any of these acts occurred in the State of Washington.

CP at 67. Jury instruction 7, as given, defined for the jury the crime of robbery and

further stated that "[a] person with a representative interest includes an agent,

employee or other representative of the owner of the property." CP at 66. Jury instruction 4 defined the crime of attempted first degree robbery.[3]

As relevant here, the jury found Nelson guilty of attempted first degree robbery.[4] The Court of Appeals, Division Three, affirmed, the majority holding in relevant part that the "to convict" instruction for attempted first degree robbery lacked an "essential nonstatutory element in the to-convict robbery instruction." *Nelson*, No. 34032-5-III, slip op. at 9. The court found the instruction error harmless beyond a reasonable doubt. Judge Pennell authored a concurring opinion, positing that the perceived flaw in the instructions did not concern an essential element of the crime charged because Nelson, unlike the defendant in *Richie*, was charged with an attempt and not the substantive crime. Nelson petitioned this court for review, which we granted "only on the *State of Washington v. Richie* jury instruction issue." Order, *State v. Nelson*, No. 94712-1 (Wash. Nov. 8, 2017).

---

[3] Jury instruction 4 reads: "A person commits the crime of Attempted First Degree Robbery when, with intent to commit that crime, he does any act that is a substantial step toward the commission of that crime." CP at 63.

[4] The jury also found Nelson guilty of attempting to elude a pursuing police vehicle and, by special verdict, that he was armed with a firearm when he committed the crime. He was found to be a persistent offender under RCW 9.94A.570 and sentenced to life without parole.

ISSUE

Is a victim's ownership or representative capacity an essential element of the crime of attempted first degree robbery that must be included in the "to convict" instruction?

ANALYSIS

Nelson alleges that the trial court's "to convict" instruction was constitutionally deficient because it omitted "an essential element of the charge."[5] Pet. for Review at 2. "We review alleged errors of law in jury instructions de novo." *State v. Boss*, 167 Wn.2d 710, 716, 223 P.3d 506 (2009) (citing *State v. Miller*, 156 Wn.2d 23, 27, 123 P.3d 827 (2005)). "An omission or misstatement of the law in a jury instruction that relieves the State of its burden to prove every element of the crime charged is erroneous." *State v. Thomas*, 150 Wn.2d 821, 844, 83 P.3d 970 (2004). Such an omission or misstatement may nevertheless be subject to harmless error analysis. *Neder v. United States,* 527 U.S. 1, 9, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999); *Thomas*, 150 Wn.2d at 844. The test articulated by the Supreme Court in *Neder* is "whether it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Neder*, 527 U.S. at

---

[5] In his supplemental briefing, Nelson attempts to reformulate the issue raised in his petition by arguing that "the jury must be advised of the elements of the completed crime to properly assess the defendant's intent to commit it," and that the omission "here was erroneous and harmful." Suppl. Br. of Pet'r at 8.

15 (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967))).

We first note that "[i]n considering the dimensions of attempt law, the purposes served by this crime must constantly be kept in mind." 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 11.2(b) at 292 (3d ed. 2017). The law of attempt serves several penological objectives, the most obvious of which are to stop, deter, and reform a person who has unsuccessfully attempted to commit a crime. Attempt law provides a basis for and makes possible "preventive action by the police *before* the defendant has come dangerously close to committing the intended crime." LAFAVE, *supra*, at 291. While general deterrence is also a consideration, a threat of punishment for the attempt is "unlikely to deter a person who is willing to risk the sanction provided for the crime which is his object." LAFAVE, *supra*, at 292. This court has consistently maintained that "[t]he attempt statute focuses on the actor's criminal intent, rather than the impossibility of convicting the defendant of the completed crime." *State v. Townsend*, 147 Wn.2d 666, 679, 57 P.3d 255 (2002); *accord State v. Luther*, 157 Wn.2d 63, 74, 134 P.3d 205 (2006).

Our current revised criminal code was modeled in part on the American Law Institute's *Model Penal Code* (Proposed Official Draft 1962). *See State v. Johnson*, 173 Wn.2d 895, 905-06, 270 P.3d 591 (2012) (discussing the *Model Penal Code*

9

and the crime of attempt as codified in RCW 9A.28.020). The *Model Penal Code*

provides, in relevant part, that

> [a] person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he [or she]:
> (a) purposely engages in conduct that would constitute the crime if the attendant circumstances were as he [or she] believes them to be.

MODEL PENAL CODE § 5.01. While the crime of attempt in Washington is codified

in RCW 9A.28.020, as a preliminary matter it is notable that the question of a

victim's ownership or representative capacity is viewed through the lens of the

perpetrator as he or she believed the circumstances to be at the time of the attempt.

It is generally of no consequence in the context of an anticipatory or inchoate

offense, what the actual attendant circumstances were at the time the actor engaged

in proscribed conduct. *See, e.g., Luther*, 157 Wn.2d at 73 ("[A]n attempt

conviction results because of the defendant's 'bad intent' to commit the crime and

the fact that had things been as the defendant believed them to be, he or she would

have completed the offense."); *see also* RCW 9A.28.020(2) (providing that "it is

no defense to a prosecution of . . . attempt that the crime charged to have been

attempted was, under the attendant circumstances, factually or legally

impossible"). This means that in the attempted first degree robbery at issue here,

the question is not whether the victim had any type of *actual* possessory interest in

10

the property, but rather what the perpetrator *believed* the attendant circumstances

to be. There is no dispute that Nelson believed that the pharmacy technician, as

well as the pharmacist, while on the job, had the requisite ownership,

representative, or possessory interest in the oxycodone. Absent such a belief, no

reason would exist for Nelson to demand that Meinhold or Newcomer give him the

prescription drug. Thus, the inquiry here is qualitatively different from the inquiry

the petitioner would have the jury and this court engage in—it is entirely irrelevant

whether Meinhold did, *in fact*, have access to the drug in her representative

capacity as an employee.

Nevertheless, because the crime of attempt is statutorily codified, the

substantive inquiry into whether a victim's ownership or representative capacity is

an essential element of the crime of attempted first degree robbery starts with the

language of the statute defining the crime of attempt. That statute reads, in relevant

part:

> (1) A person is guilty of an attempt to commit a crime if, with intent
> to commit a specific crime, he or she does any act which is a
> substantial step toward the commission of that crime.
>    (2) If the conduct in which a person engages otherwise
> constitutes an attempt to commit a crime, it is no defense to a
> prosecution of such attempt that the crime charged to have been
> attempted was, under the attendant circumstances, factually or legally
> impossible of commission.

RCW 9A.28.020. Thus, the crime of attempt on its face contains two essential elements the State has to prove to secure a conviction: (1) intent to commit a specific crime and (2) any act constituting a substantial step toward the commission of that crime. *See State v. Aumick*, 126 Wn.2d 422, 429, 894 P.2d 1325 (1995) ("[T]his court and the Court of Appeals have repeatedly recognized that attempt consists of two elements: (1) intent, and (2) a substantial step."). In the context of the crime at issue, attempted first degree robbery, that means that the State must prove that the actor must have (1) intended to commit first degree robbery and (2) undertaken any act constituting a substantial step toward the commission of first degree robbery.

The relevant "to convict" attempt Washington Pattern Jury Instructions provides two options for instructing the jury on the crime of attempt. WPIC 100.01 mimics the statutory definition, written as a complete sentence, while WPIC 100.02 lists each of the three[6] elements of the crime of attempt separately. 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 100.01, at 432, 100.02, at 434 (4th ed. 2016) (WPIC). Comments to the WPICs suggest that there are two alternative methods of formulating the "to convict" instructions acceptable in attempt prosecutions: (1) stating the two essential

---

[6] The third element as stated in the WPICs is that the act must occur in Washington. This element is disregarded for purposes of the analysis here.

elements of attempt and providing a separate definition of the crime the actor intended to commit, or (2) providing the statutory definition of attempt and providing a separate elements instruction delineating the elements of the crime the defendant intended to commit and using the word "attempt" along with those elements.

Of the two approaches to formulating the "to convict" instruction suggested in the WPICs comments, the first approach appears to be more streamlined and in line with the statutory definition. Neither requires the State to prove each element of the *underlying substantive* crime. The actor's intent to engage in actions that would bring about the crime and an act constituting a substantial step are the only elements the State has to prove. Providing a separate definition to the jury of the nature and the elements of the underlying crime serves the purpose of educating the jury on what the crime would have looked like if completed. But this definition is not required to be included in the "to convict" instruction. This means that the argument that Meinhold's ownership or representative capacity, an *essential* element of the crime of robbery, is also an *essential* element of the crime of attempted first degree robbery, fails.

A separate concern alluded to by Nelson is the structure of the jury instructions as given. The trial court opted to provide the statutory definition of the crime of attempt separately, and for the "to convict" instruction to list the elements

13

of the crime the defendant intended to commit, which, according to the WPICs, also calls for using the word "attempt" along with those elements. As given, the trial court's "to convict" instruction here, excerpted *supra*, contained superfluous provisions in several respects. It included several elements of the crime of first degree robbery that the State was not required to prove where a defendant is charged with an attempt crime. The "to convict" instruction here included "[t]hat force or fear *was used* by the defendant to obtain or retain possession of the property or to prevent or overcome resistance to the taking or to prevent knowledge of the taking." CP at 67 (emphasis added). Similarly, it provided "[t]hat Myung B. Meinhold was an employee of the owner of the property."[7] CP at 67. The prosecutor's arguments at trial to bring this distinction to the trial judge's attention were unsuccessful. *See, e.g.*, 5 VRP (Jan. 11, 2016) at 401-02. As given in this case, the "to convict" instruction, while perhaps not perfect, expressed the necessary basic elements and included the elements of attempt. Its only "flaw," arguably, was it required the State in this case to establish more than necessary. That does not constitute reversible error.

---

[7] For purposes of attempt, the "to convict" instruction should have at most required proof only that Nelson *intended* or *attempted* to use force and that he *believed* Meinhold had an ownership, representative, or possessory interest in the property Nelson was attempting to take.

As discussed earlier, the underlying crime being attempted may be defined separately, as was done in this case, because the purpose is to inform and educate the jury on what the defendant intended to accomplish.[8] Nelson argues that because "the State chose to include all of the elements of the completed offense in the 'to convict' instruction rather than proffering a separate instruction setting out the elements of the completed charge," the State "undertook the obligation . . . to prove the elements beyond a reasonable doubt." Suppl. Br. of Pet'r at 18.

A "to convict" instruction must contain all the elements of the crime "because it serves as a 'yardstick' by which the jury measures the evidence to determine guilt or innocence." *State v. Smith*, 131 Wn.2d 258, 263, 930 P.2d 917 (1997). We have also held in *State v. DeRyke* that "a reviewing court may not rely on other instructions to supply the element missing from the 'to convict' instruction. *DeRyke*, 149 Wn.2d 906, 910, 73 P.3d 1000 (2003) (citing *Smith*, 131 Wn.2d at 262-63). Important to the case here, *DeRyke* also reiterated that an attempt crime contains only two elements: intent to commit a specific crime and taking a substantial step toward the commission of that crime, and that an attempt instruction does not have to provide the elements of the crime allegedly attempted. 149 Wn.2d at 910-11. In *DeRyke*, we nevertheless held that the "to convict"

---

[8] *See* CP at 66 (jury instruction 7 defining the crime of robbery).

instruction that did not specify the degree of the rape allegedly attempted was error.

The record reveals that unlike *DeRyke*, the trial court's "to convict" instruction here was a list of all the elements of first degree robbery allegedly attempted, and therefore *DeRyke* is not directly applicable. The fact that the jury was provided the statutory definitions of the crimes of both first degree robbery, CP at 65, and robbery[9] that address the elements of the underlying crime charged, separately, is not dispositive. The dispositive question is whether the "to convict" instruction contained the two elements of attempt and informed the jury of the crime with which Nelson was charged with sufficient clarity. We hold that it did. While including Meinhold's employee status in the "to convict" instruction resulted in the State having to prove it, generally the State does not need to prove in an attempt prosecution the element of an ownership, representative or possessory interest. RCW 9A.28.020(2) provides that legal or factual impossibility

---

[9] Jury instruction 7 reads:
"A person commits the crime of robbery when he unlawfully and with intent to commit theft thereof takes personal property from the person or in the presence of another against that person's will, *the person had an ownership, representative or possessory interest in the property*, by the use or threatened use of immediate force, violence, or fear of injury to that person. A threat to use immediate force or violence may be either expressed or implied. The force or fear must be used to obtain or retain possession of the property or to prevent or overcome resistance to the taking, in either of which case the degree of force is immaterial.
"A person with a representative interest includes an agent, employee or other representative of the owner of the property." CP at 66 (emphasis added).

16

is not a defense to an attempt. Here, requiring the State to prove that Meinhold

"was an employee of the owner of the property" for purposes of attempt is more

than sufficient to ensure that the State met its burden of proving that Nelson

*believed* that Meinhold had some representative interest in the oxycodone.

Therefore, we conclude that the "to convict" instruction given in this case perhaps

contained unnecessary provisions but was sufficiently accurate not to constitute

error.[10]

As indicated earlier, review was granted to address the holding of *Richie*.

Given the two essential elements of the crime of attempted first degree robbery, the

analysis from *Richie* is not directly applicable. In *Richie*, an off-duty employee

attempted to prevent the defendant from walking out with two bottles of brandy he

failed to pay for; the defendant struck the employee over the head with one of the

bottles before fleeing with the merchandise. He was charged and convicted of first

degree robbery. On appeal, Division Two of the Court of Appeals held that a

nonstatutory element that the victim have an ownership, representative, or

possessory interest in the property stolen was an essential implied element of the

---

[10] We also take this opportunity to suggest what a correctly drafted "to convict" instruction could look like and agree with the concurrence by Judge Pennell that if the trial court here chose to provide a definition of "attempt" under WPIC 100.01, the "to convict" instruction should include the two essential elements of attempt and a general description of the underlying crime and its elements—the latter only for purposes of educating the jury on the object of the attempt. The description of the crime attempted may also be provided separately.

17

crime or robbery. It noted that RCW 9A.56.190, which defines the crime of robbery, does not require that the victim have an ownership, representative, or possessory interest in the property, but relied on existing case law[11] to conclude that the element of an ownership, representative or possessory interest is essential. Relying on earlier cases, the *Richie* court reversed the conviction and held that in order for an employee to have a representative interest in property, she has to have "care, custody, control, or management of the property." *Richie*, 191 Wn. App. at 925 (citing *Latham*, 35 Wn. App. at 865).

This reasoning by the Court of Appeals in *Richie* must be rejected. Requiring the State to establish care, custody, control, or management of the property by an employee for purposes of proving representative interest is unnecessary. As we have previously stated, "By describing the crime of robbery as it did, the legislature established an offense which is dual in nature—robbery is a property crime and a crime against the person." *State v. Tvedt*, 153 Wn.2d 705, 711, 107 P.3d 728 (2005). "The unit of prosecution is defined both by the taking of *property* and that the forcible taking be from or *from the presence of* a *person* against his or her will." *Tvedt*, 153 Wn.2d at 715 (second emphasis added). Taking

---

[11] *See, e.g.*, *Latham*, 35 Wn. App. 862 (holding that although anyone having a right to possession superior to that of the robbery defendant is deemed to be the owner as against that defendant, vehicle passenger was not a victim because he lacked authority to act concerning the vehicle and was not in possession of the vehicle at the time the alleged robbery occurred).

personal property from the person or his or her presence implies that that person, and not the defendant, has a superior possessory right to the item being taken.

For example, a person who forcibly takes groceries being delivered to the customer's car by a store employee who is on her break is guilty of robbery regardless of whether that employee had care, custody, control, or management of the property. Robbery can occur even where the victim in possession of the item has no legally cognizable claim to that property, such as robbing a thief of the property; or where the property is illegal to possess, such as robbing a drug dealer of his or her drugs. While it is certainly true in a robbery prosecution that a victim must be alleged and the evidence established who the victim is in relation to the property taken, be it a store clerk, a pharmacy technician, a thief, or a drug dealer, the State does not need to separately prove, and the "to convict" instruction need not include, that the victim had care, custody, control, or management of the property. We overrule *Richie, Latham*, and other cases to the extent they hold otherwise.

## CONCLUSION

We affirm the Court of Appeals but clarify that the ownership, representative, or possessory interest is not an essential element of the crime of attempted first degree robbery and that the Court of Appeals incorrectly determined that it was. We further conclude that here the "to convict" instruction

was sufficient.

_____

WE CONCUR:

_____  _____

_____

_____  _____

_____  _____

20

No. 94712-1

GONZÁLEZ, J. (concurring)—I concur with the majority. I write separately to stress that a first degree robbery charge might well be sustainable when the property was taken from a customer, not just an employee. The majority opinion provides an example where an employee is robbed while delivering groceries to a customer's car. It concludes that the State is not required to prove, and the "to convict" instruction does not need to include, that the employee had "care, custody, control, or management of the property." Majority at 19. I completely agree. Similar principles might well apply when a customer tries to stop the theft. For example, if a thief reaches into an open cash register and a customer, the only witness, tries to stop the theft, a trier of fact might well conclude the customer "was acting as a representative of the owner." 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 37.02(2) (4th ed. 2016). With these observations, I concur.

González, J.

No. 94712-1

GORDON McCLOUD, J. (concurring)—I agree with the majority that this case involves an attempted robbery, not a completed crime. Majority at 2. I further agree with the majority that the elements of such an attempt crime are (1) intent to commit the target crime, here the robbery, and (2) "any act which is a substantial step toward the commission of that crime." *Id.*; RCW 9A.28.020(1). Since the elements instruction in this case contained those two elements,[1] I also agree with the majority that we should affirm.

That decision is the only holding in this case. In fact, the majority correctly explains that its other statements about the continuing validity of *State v. Richie*, 191 Wn. App. 916, 365 P.3d 770 (2015), are irrelevant to its decision to affirm. It states, "As indicated earlier, review was granted to address the holding of *Richie*. Given the two essential elements of the crime of attempted first degree robbery, the analysis from *Richie* is not directly applicable." Majority at 17. I agree.

---

[1] Clerk's Papers at 66 (jury instruction 7).

1

For that reason, the majority's decision to go on and purportedly overrule

*Richie* is completely unnecessary. It is an interesting expression of opinion, but it

has no bearing on the outcome of this case.

I therefore respectfully concur.

Gordon McCloud, J.